Patsi **AYALA**, et al., Plaintiffs,

v.

**JOY MANUFACTURING COMPANY,** a Pennsylvania corporation, et al., Defendants.

Myra Lynn **GUTHRIE,** et al., Plaintiffs,

v.

**JOY MANUFACTURING COMPANY,** et al., Defendants.

Civ. A. Nos. 83–JM–580, 82–JM–1907.

United States District Court,
D. Colorado.

May 9, 1985.

See also 580 F.Supp. 521.

JWN, P.C. by James W. Nearen, Jr., Englewood, Colo., for plaintiffs.

Hall & Evans by James A. Ruf, Bruce A. Menk, Denver, Colo., for defendant Joy Mfg. Co.

Wood, Ris & Hames by Bruce F. Fest, Denver, Colo., for defendant Service Machine Corp.

Madden and Strate, P.C. by William J. Madden, Wheat Ridge, Colo., for defendant Mine Safety Appliance Co.

Office of the U.S. Atty. by Daniel S. Maus, Henry L. Solano, Asst. U.S. Atty., Denver, Colo., Brenda Moss Green, Trial Atty., Torts Branch, Civ. Div., Dept. of Justice, Washington, D.C., for defendant U.S.

Fortune & Lawritson, P.C. by Lowell Fortune, Jon L. Lawritson, Denver, Colo., for defendant McJunkin Corp.

Zarlengo, Mott and Zarlengo by Lynn P. Lyon, Albert E. Zarlengo, Denver, Colo., for defendant Bacharach Instrument Co.

### ORDER

JOHN P. MOORE, District Judge.

This matter is before me on defendant United States of America's motion to dismiss plaintiffs' second amended complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The issues presented have been fully briefed by the parties and oral argument would not serve to aid the court in resolving the questions presented. Jurisdiction is based both on 28 U.S.C. §§ 1331 and 1332.

These actions arise out of an accident which occurred on April 15, 1981, in a mine owned and operated by Mid-Continent Resources, Inc., near Redstone, Colorado. On that date, fifteen miners were killed in a methane and coal explosion in the Dutch Creek No. 1 mine. The amended complaints in the above-entitled actions bring claims for the alleged wrongful death of those miners. Defendants in these actions include the United States of America and the manufacturers of a continuous mining machine which allegedly caused the explosion. The claims against the manufacturers are products liability claims based on strict liability, negligence, and breach of express or implied warranty. The claim against the United States is brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and § 2671 (1982). This claim asserts that the mine inspection conducted by the Mine Safety and Health Administration (MSHA) was negligently performed, and that coal mine electrical safety inspector Jack Marshall negligently directed the installation of the electrical components which caused the explosion.

The sole issue raised by the United States' motion to dismiss is whether the discretionary function exception to the waiver of sovereign immunity embodied in the Federal Tort Claims Act bars plaintiffs' amended claim that the "active negligence" of federal coal mine inspector Jack Marshall was the proximate cause of plaintiffs' decedents' deaths. It is the position of the United States that the Supreme Court's recent opinion dealing with the discretionary function exception, *United States v. S.A. Empresa De Viacao Aerea Rio Grandense ("Varig Airlines")*, —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), as well as the court's summary remand of *Hylin v. United States* —— U.S. ——, 105 S.Ct. 65, 83 L.Ed.2d 16 (1984), mandate the dismissal of plaintiffs' second amended complaint as against the United States. The United States denies that its inspector gave a "mandatory-nonoptional" instruction to draft the wiring diagram for installation of the electrical circuitry which is alleged to have caused the mine disaster. However, even if such an instruction was given, the United States argues that the acts of its inspector were clearly discretionary acts done in his regulatory capacity, and as such, were within the discretionary

function exception to the waiver of sovereign immunity of the United States.

Plaintiffs concede that after *Varig Airlines, supra,* the discretionary function exception must apply to government activities which are "purely" regulatory in nature. Plaintiffs, however, take issue with defendant United States' characterization of the coal mine electrical inspector's actions in this case as being in any way "regulatory." According to plaintiffs, Jack Marshall, the coal mine electrical inspector employed by the United States, provided "technical assistance" to Mid-Continent Resources, Inc. when he directed how electrical wiring connections should be made to install a complex lighting system to a continuous mining machine. Such "technical engineering assistance," argues plaintiffs, constitutes "active negligence at the operational level," and is not a protected regulatory or policing function within the meaning of the discretionary function exception to the Federal Tort Claims Act.

The question before the Supreme Court in *Varig Airlines, supra,* was whether the United States could be held liable for the Federal Aviation Administration's (FAA) alleged negligent failure to inspect certain elements of aircraft type design before certificating the aircraft. Under the Act, the duty to ensure that an aircraft conforms to FAA safety regulations lies with the manufacturer and operator; the FAA's duty consists solely of policing compliance with FAA safety regulations, a responsibility it has decided, in its discretion, to fulfill through implementation of a "spot check" program. Confronted with these facts, a unanimous court held that the alleged negligent acts of the FAA inspectors fell within the discretionary function exception to the Federal Tort Claims Act which applies to a claim "[b]ased upon the exercise or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (1982).

In reaching this result, the court undertook a general discussion of the parameters of the discretionary function exception. Although it declined to define "with precision" every contour of the exception, the court did isolate two factors useful in determining whether acts of a government employee are protected from liability under § 2680(a). First, the court held that it is the nature of the conduct as opposed to the status of the actor that governs whether the discretionary function exception applies in a given case. *Varig Airlines, supra,* 104 S.Ct. at 2675. Second, the court concluded that the discretionary acts of the government acting in its role as regulator of the conduct of private individuals were clearly intended to be within the exception. In so finding, the Supreme Court observed that "by fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took 'steps to protect the government from liability that would seriously handicap efficient government operations.'" *Varig Airlines, supra* at 2785.

The Supreme Court's ruling in *Varig Airlines* was followed by its action of summarily vacating the Seventh Circuit's decision in *Hylin v. United States,* 715 F.2d 1206, *vacated and remanded,* —— U.S. ——, 105 S.Ct. 65, 83 L.Ed.2d 16 (1984). In *Hylin, supra,* plaintiff's husband was electrocuted when he came in contact with a defective junction box. Plaintiff sued the United States under the FTCA alleging she was entitled to recover for the negligent failure of the Mine Enforcement Safety Administration (MESA) inspectors to inspect and cite for correction the defective junction box which caused the death. Plaintiff also claimed she should recover for the negligent enforcement of a mandatory safety standard requiring handrails along conveyors which narrowed the distance between the conveyor and the defective junction box, and thereby either created or enhanced the risk of injury from the defective junction box. In its initial opinion, the Seventh Circuit held the discretionary function exception inapplicable to the MESA inspectors' orders to the mine operator to abate the violation of the man-

datory safety standard on conveyors by erecting handrails, compliance with which negligently enhanced the risk of harm from the defective junction box.

On remand, the Seventh Circuit, relying on the Supreme Court's *Varig Airlines* opinion, reversed its earlier ruling. *Hylin v. United States,* 755 F.2d 551 (7th Cir. 1985) ("*Hylin II*"). In so doing, the court rejected its prior view that application of the discretionary function exception turns on the specific acts or omissions of the government employee. *Hylin II, supra* at 553. According to the Seventh Circuit, after *Varig Airlines,* whether the government was in fact negligent is irrelevant to the discretionary function analysis. *Hylin II, supra* at 553. Like the Supreme Court in *Varig Airlines, supra,* the Seventh Circuit emphasized that the proper inquiry is into the nature of the challenged governmental activity. "If the regulatory inspection and enforcement activities of an agency require its employees to exercise discretion in performing their duties, the discretionary function exception bars tort claims against the government based upon those performances." *Hylin II, supra* at 553. Applying this analysis to the facts in *Hylin,* the Seventh Circuit found that under the Federal Metal and Nonmetallic Mine Safety Act of 1966, 30 U.S.C. § 721 *et seq.* (1976),[1] MESA mine inspectors were given broad discretion in the performance of their regulatory and enforcement duties. As such, the *Hylin II* court had no trouble concluding that the enforcement activities of MESA were protected by the discretionary function exception. *Hylin II, supra.*

In the present case, mine safety inspectors operate pursuant to the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. § 801 *et seq.,* and the regulations promulgated thereunder, 30 C.F.R. § 75.1 *et seq.* (1984). Like its predecessor statute, the Federal Metal and Nonmetallic Mine

Safety Act of 1966, *supra,* the Mine Safety Act is a regulatory statute whose primary concern is the safety of mine workers. *United States v. Consolidation Coal Co.,* 560 F.2d 214 (6th Cir.1977); *Holland v. United States,* 464 F.Supp. 117 (W.D.Ky. 1978). As such, the Mine Safety Act expressly places responsibility for mine safety upon mine owners and operators. 30 U.S.C. § 801 (1982). Enforcement of the Act is delegated to the Secretary of Labor who has the power to promulgate rules and regulations governing the inspection of mines and the manner in which inspections are conducted. 30 U.S.C. § 811 (1982). Under 30 U.S.C. § 954 (1982), the Secretary, through the Mine Safety Health Administration (MSHA), can appoint personnel, including mine inspectors, and specify their duties. As with MESA inspectors, in fulfilling their inspection and enforcement duties, Mine Safety Act inspectors exercise considerable discretion. *Hylin II, supra* at 554; *Consolidated Coal Co., supra; United States v. Holland, supra.* Importantly, for the facts in this case, the Mine Safety Act also provides that as part of his regulatory and enforcement responsibilities, the Secretary, "*shall,* to the greatest extent possible, provide *technical assistance* to operators in meeting the requirements of [the Act] ... and in further improving the health and safety conditions and practices in coal and other mines." 30 U.S.C. § 952(b) (1982) (Emphasis Added).

In light of the Mine Safety Act regulatory and enforcement scheme, as discussed above, and the *Varig Airlines* and *Hylin II* holdings, there can be no doubt but that the actions of coal mine electrical inspector Jack Marshall are within the broad discretion given MSHA inspectors in the performance of their regulatory and enforcement duties. Cf. 30 U.S.C. § 952(b) (1982). As discretionary acts of the government acting in its role as regulator of the conduct of Mid-Continental Resources, Inc.,

---

1. The Act was repealed in 1977 and replaced by the Federal Mine Safety and Health Act of 1977, Pub.L. No. 95–164, 91 Stat. 1290, codified at 30 U.S.C. § 801 *et seq.* The FMSA was in effect when the accident in the present case occurred, and is similar to the previous Act.

the acts of MSHA inspectors, like those of the FAA, and MESA, in *Varig Airlines* and *Hylin II* respectively, clearly fall within the discretionary function exceptions's broad scope.[2] *Varig Airlines, supra,* 104 S.Ct. at 2765. For these reasons, plaintiffs' second amended complaint will be dismissed as against the United States.

Upon the foregoing, it is

ORDERED the motion of the United States to dismiss plaintiffs' second amended complaint is granted, and the claims against the United States are dismissed.

FURTHER ORDERED defendant United States of America's motion for oral argument, filed April 29, 1985, is denied as moot.

FURTHER ORDERED defendant Service Machine Co.'s motion for extension of time to submit supplemental expert report by a human factors analyst is granted. Defendant Service Machine Co. shall file this report on or before June 3, 1985.

**2.** In reaching this conclusion, I necessarily reject plaintiffs' attempt to distinguish the facts in *Varig Airlines,* from those in this case. It is plaintiffs' position that the cases are distinguishable on the ground that the alleged negligence in the present case constitutes "active" negligence while the negligence in *Varig Airlines* was simply a failure to discover or inspect. No such distinction was recognized, and none can be implied from the *Varig* opinion. As stated above, the Supreme Court in *Varig Airlines* held that the specific negligent acts and omissions of the government are irrelevant in determining whether the alleged negligent acts are within the discretionary function exception. *Varig Airlines, supra* at 2765. Instead, the analysis turns on whether regulatory and enforcement activities of an agency require its employees to exercise discretion in the performance of their duties. *Varig Airlines, supra* at 2765.

Furthermore, plaintiffs' argument has recently been rejected by the Seventh Circuit in *Hylin II.* In that case, despite the fact that plaintiff claimed both "passive" and "active" negligence on the part of MESA inspectors, the court read the claims together, and applied the *Varig Airlines* analysis: examining the nature of the regulatory and enforcement scheme involved as opposed to the specific negligent acts and omissions of the MESA inspectors. By so doing, the Seventh Circuit rejected the position that the *Varig Airlines* holding and analysis would be inapplicable to situations of alleged "active" negligence.