**J. Kent DANIELS, Plaintiff,**

**v.**

**BLACK MOUNTAIN SPRUCE, INC., Hydraulic Products and Design, Inc., a foreign corp., and the United States of America, Defendants.**

Civ. A. No. 86–M–145.

United States District Court,
D. Colorado.

Aug. 6, 1987.

William Trine, Bruce Downsbrough, Boulder, Colo., Mart Vehik, Little Rock, Ark., for plaintiff.

C. Willing Browne, Denver, Colo., James G. Touhey, Jr., Dept. of Justice, Washington, D.C., Jerry Atencio, Asst. U.S. Atty., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

The plaintiff, J. Kent Daniels, was seriously injured while at work, when a blade came loose from a trimmer saw and hit him in the legs. Daniels has brought suit against two corporations allegedly responsible for the design and manufacture of the saw and against the federal government. The claim against the government is based on the allegation that an inspector from the Occupational Safety and Health Administration (OSHA) directed Daniels' employer to remove a solid wood guard from the trimmer saw and replace it with a wire mesh screen.

After the accident in which Daniels was injured, other OSHA inspectors cited his employer for a violation of the regulation pertaining to trimmer saw guards, finding that the wire mesh screen was not in compliance. The plaintiff claims that the United States was "actively negligent" since its inspectors ordered the replacement of one guard with another which did not meet OSHA's own standards. Amended Complaint, ¶ 26. The plaintiff also claims that the United States was negligent in failing to return to the mill and inspect the wire mesh screen once it was installed. *Id.* Finally, the plaintiff claims that the United States was negligent when its inspectors failed to discover the improperly attached saw blades during the initial inspection. Amended Complaint, ¶ 29.

In response to these allegations the government has filed a motion to dismiss the claims against it for lack of subject matter jurisdiction. As grounds for this motion the government asserts that all of its alleged acts or failures to act fall within the discretionary function exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a). The issues have been briefed adequately and oral argument would not assist this court.

The discretionary function exception to the FTCA states that the United States may not be held liable for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception to the FTCA's waiver of sovereign immunity has been broadly construed on several occasions by the United States Supreme Court; most recently in *United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984).

In *Varig* the Court held that the discretionary function exception barred suit against the government based on the alleged negligence of the Federal Aviation Administration (FAA) in establishing and carrying out an aircraft safety regulatory scheme. The Court gave this guidance in the application of this exception to liability:

[f]irst ... the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.

Second, whatever else the discretionary function exception may include, *it plainly was intended to encompass the*

*discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals.*

*Id.* (emphasis added).

Thus, even the acts of low level or field workers, involved in regulatory activities, fall within the exception so long as they are discretionary. The Court also stated that the "underlying basis" for the exception was that "Congress wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *Varig,* 467 U.S. at 814, 104 S.Ct. at 2765.

The Court then analyzed the statutory scheme under which the FAA regulated the airline industry. It found that "Congress specifically empowered the Secretary to establish and implement a mechanism for enforcing compliance with minimum safety standards according to her 'judgment of the best course.' " *Varig,* 467 U.S. at 816, 104 S.Ct. at 2766 (citation omitted). The Court stated that "[t]he FAA certification process is founded upon a relatively simple notion: the duty to ensure that an aircraft conforms to FAA safety regulations lies with the manufacturer and operator, while the FAA retains the responsibility for policing compliance." *Id.* The Secretary of Transportation, furthermore, had developed a system of "spot-checks" through which compliance was policed.

Similarly, Congress, in the Occupational Safety and Health Act, has put primary responsibility for maintaining a safe workplace on the employer and has allowed the Secretary of Labor to promulgate such regulations as he *determines would best serve* the purposes of the Act. 29 U.S.C. §§ 654–655. Pursuant to this power, the Secretary has established a detailed regulatory scheme under which OSHA inspectors may check places of employment to determine whether the employers are complying with their duties under the act. 29 C.F.R. § 1903. This system of inspections is structured much like the system of "spot-checks" adopted by the FAA and at issue in *Varig.*

Furthermore, Congress clearly had economic and social policy concerns in mind when it created the statutory scheme governing OSHA. The statement of congressional findings at the beginning of the Occupational Safety and Health Act includes this language: "Congress finds that personal injuries and illnesses arising out of work situations impose a substantial burden upon, and are a hindrance to interstate commerce in terms of lost production, wage loss, medical expenses, and disability compensation payments." 29 U.S.C. § 651.

The *Varig* Court, after finding that the adoption of the FAA's regulatory scheme was "plainly discretionary activity" which should not be judicially second-guessed, held that "[i]t follows that the acts of FAA employees in executing the 'spot-check' program in accordance with agency directives are protected by the discretionary function exception as well." *Varig,* 467 U.S. at 820, 104 S.Ct. at 2768.

All of the alleged activities of the OSHA inspector in question in the present case must be characterized in the same way. He was executing the OSHA equivalent of the "spot-check" system, pursuant to the regulations creating that system. He inspected the saw and made a judgment that the solid wood guard should be replaced with a wire mesh screen. In doing so, he was exercising the discretion which falls under the protection of the discretionary function exception as interpreted by the Supreme Court in *Varig.*

The plaintiff's allegations that the inspector negligently failed to return to the mill to reinspect or approve the wire screen once it was in place are also within the discretionary authority protected by the exception. An agency which is given discretion as to how to ensure compliance with regulatory requirements is clearly exercising that discretion when it decides whether to make an inspection in any given situation. *Varig,* 467 U.S. at 820, 104 S.Ct. at 2767.

The plaintiff attempts to distinguish *Varig* by arguing that first, the regulation pertaining to trimmer saw guards is a mandatory standard that must be met, and

second, that even if discretion did exist in this situation it was not the type for which Congress meant to provide protection.

While the regulation is phrased as mandatory, its language supports the conclusion that the inspector was exercising discretion when he ordered the wood guard replaced with the wire mesh. The portion of the regulation cited by the plaintiff states that "[t]he end saws on trimmer shall be guarded." 29 C.F.R. § 1910.265(e)(4)(ii)(b). This regulation does not require that a solid wood guard be used, nor does it state that a wire mesh guard is not adequate. Instead, it leaves the determination of the adequacy of any guard to the discretion of the individual who inspects the particular saw.

Although the plaintiff makes much of the fact that the wire mesh screen which the first inspector ordered installed was later determined to be inadequate, the discretionary function exception applies "whether or not the discretion be abused." 28 U.S.C. § 2680(a). Even if the acts of the inspector in question were completely unreasonable and negligent, they are protected under the exception if they are discretionary. *Barnson v. United States*, 816 F.2d 549, 553 (10th Cir.1987).

The plaintiff's second contention, that if discretion existed in this instance it was not of the kind that Congress intended to grant protection is implicitly based on the language of *Varig* stating that "legislative and administrative decisions grounded in social, economic, and political policy," *Id.* 467 U.S. at 814, 104 S.Ct. at 2765, are to be protected by the discretionary function exception. This language implies that decisions that do not involve such policies are not to be protected. The discretion given to OSHA inspectors is grounded in social and economic policy. 29 U.S.C. § 651 (quoted above).

In the Tenth Circuit, the issue of the breadth of the discretionary function exception has been addressed on several occasions since *Varig* was decided, although only one case has considered the effect of the exception when the government is acting in its regulatory capacity. In that case,

*Russell v. United States*, 763 F.2d 786 (10th Cir.1986), the court applied the exception to bar a claim that a Mine Safety and Health Administration inspector had negligently failed to detect unsafe conditions in a mine. The court stated that there was "no principled distinction between the cause of action asserted here and that rejected in *Varig Airlines*." *Id.* at 787. The regulatory scheme governing mine safety inspections is sufficiently similar to that under which OSHA operates that *Russell* mandates dismissal of this plaintiff's claim that the OSHA inspector negligently failed to detect the improperly attached saw blades.

This court has also had occasion to rule on this issue in *Ayala v. Joy Mfg. Co.*, 610 F.Supp. 86 (D.Colo.1985), *appeal pending*, No. 86–1619 (10th Cir.). In *Ayala* the plaintiffs alleged that an "inspection conducted by the Mine Safety and Health Administration (MSHA) was negligently performed, and that coal mine electrical safety inspector Jack Marshall *negligently directed the installation of the electrical components which caused the explosion.*" *Id.* at 87 (emphasis added).

This latter allegation is indistinguishable from the alleged action of the inspector in the present case in ordering the replacement of the wood guard with the wire mesh screen (Amended Complaint, ¶ 26). The court in *Ayala*, though, had no problem determining that both claims must be dismissed. It pointed to the fact that primary responsibility for mine safety was assigned to mine operators and that the MSHA was given broad discretion in enforcing compliance. Once again, this regulatory scheme is quite similar to the one governing OSHA. Thus, *Ayala*, too, supports the decision to dismiss the claims in the present case.

Only one opinion decided since *Varig* has dealt specifically with the discretionary function exception as it applies to OSHA inspections. In *Cunningham v. United States*, 786 F.2d 1445 (9th Cir.1986), the Ninth Circuit determined that the plaintiff could not maintain a suit against the government based on the failure of OSHA

inspectors, over a period of 10 years and a series of 12 inspections, to detect deficiencies which were finally found after a fatal accident.

The court compared the statutory scheme governing OSHA with the one that applied to the FAA in *Varig* and concluded that they were indistinguishable. Both placed the primary responsibility for occupational safety on employers and left the relevant agency with the discretion to determine how best to police compliance. Thus, the court concluded, "[b]oth OSHA's decision to review the employer's compliance with safety standards and its actual inspection of the Stauffer Plant are discretionary functions." *Id.* at 1447.

*Cunningham* supports the dismissal of plaintiff's allegations that the inspector negligently failed to discover the improperly attached saw blades and that OSHA negligently failed to return to reinpect the wire mesh screen. Furthermore, no reasonable distinction can be drawn between the negligent failure to discover a defect during an inspection (clearly covered by the exception, *Varig* and *Cunningham*) and the negligent imposition, during an inspection, of a requirement that a non-complying guard be installed on a saw (at least where the governing regulation did not specify that a wire screen guard did not comply).

Upon the foregoing, it is

ORDERED, that the motion of the United States to dismiss for lack of subject matter jurisdiction is granted and this civil action is dismissed as to the United States.