Patsy AYALA, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 82–S–1907.

United States District Court,
D. Colorado.

Dec. 20, 1993.

David W. Griffith, Glenwood Springs, CO, for plaintiffs.

Robin Smith, Stephen E. Handler, Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, William Pharo, Asst. U.S. Atty., Denver, CO, for defendant.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER comes before the court on remand from the United States Court of Appeals for the Tenth Circuit for further proceedings consistent with the opinion in *Ayala v. United States*, 980 F.2d 1342 (10th Cir.1992). The court has reviewed the Tenth Circuit's opinion, the entire case file, the post-trial briefs, the parties' evidentiary citations, the proposed findings and conclusions, the oral arguments made by counsel at the hearing held October 6, 1993, and the applicable law and is fully advised in the premises.

Because of the long history of this case, the court will summarize the procedural background, limiting the discussion to matters involving the claims against the United States.

### 1. Pre–Trial History

The original complaint arose out of a methane and coal dust explosion which occurred on April 15, 1981 in the Dutch Creek No. 1 Mine, an underground coal mine near Redstone, Colorado. The mine was owned and operated by Mid–Continent Coal and Coke Company (Mid–Continent). Fifteen miners

were killed in the explosion. The Plaintiffs are the families of the deceased miners. Plaintiffs filed the original complaint in Pitkin County, Colorado on October 13, 1982, alleging tort claims against certain parties involved in the manufacture and service of the equipment used in the mine. On November 10, 1982, the case was removed to the United States District Court for the District of Colorado based on diversity of citizenship.

On May 13, 1983, Plaintiffs filed an Amended Complaint adding (in the Thirteenth Claim for Relief) allegations of negligence pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), against the United States by and through the Mine Safety and Health Administration (MSHA) for failure to exercise reasonable care in connection with mandatory safety inspections. The United States filed its Answer on August 31, 1983. On October 4, 1983, this Civil Action No. 82–JM–1907 was consolidated with Civil Action No. 83–JM–580, an action by the Plaintiffs against the United States for negligent failure to inspect and detect improper installation of a mine lighting system, among other things.

On October 31, 1983, the United States moved to dismiss for lack of jurisdiction over the subject matter and failure to state a claim upon which relief could be granted. The United States argued that there was no actionable tort duty upon which the Plaintiffs could base recovery. The United States further argued that even if such a duty existed, the Plaintiffs' claims based on any acts or omissions by MSHA inspectors were barred by 28 U.S.C. § 2680(a), the discretionary function exception to the FTCA.

On February 9, 1984, District Judge John P. Moore entered an order on several pending motions. Pursuant to Fed.R.Civ.P. 12(b)(6), Judge Moore dismissed all claims then pending against the United States, concluding that the inspection procedures of the Mine Safety Act do not create a tort duty on the part of the government toward the Plaintiffs' decedents. *Ayala By and Through Ayala v. Joy Mfg. Co.,* 580 F.Supp. 521, 525–26 (D.Colo.1984). Since Judge Moore concluded there was no tort duty, he declined to determine whether the inspection process fell within the discretionary function exception of the FTCA. Judge Moore's February 9, 1984 Order was never appealed.

On May 3, 1984, Plaintiffs sought leave to file a Second Amended Complaint alleging a Ninth Claim for Relief entitled "Active Negligence" and a Tenth Claim for Relief entitled "Negligent Inspection." By orders of Magistrate Judge Donald E. Abram on May 21, 1984 and Judge Moore on June 25, 1984, the Plaintiffs were allowed to add a claim based upon an alleged negligent "non-optional instruction" relating to the wiring of the lights. Plaintiffs were not allowed to reassert the claim for negligent inspection that Judge Moore had previously dismissed. Plaintiffs filed their Second Amended Complaint on May 30, 1984. The United States answered the Second Amended Complaint on July 19, 1984.

On November 7, 1984, the United States again moved to dismiss the complaint on the grounds that the court lacked jurisdiction over the subject matter and that the complaint failed to state a claim upon which relief could be granted. This motion was based on the second prong of the October 31, 1983 motion which was not decided by Judge Moore, specifically, that the Plaintiffs' "active negligence" claim was barred by the discretionary function exception to the FTCA. In a May 9, 1985 Order, Judge Moore determined that the acts of the MSHA inspectors fell within the discretionary function exception and dismissed Plaintiffs' Second Amended Complaint as against the United States. *Ayala v. Joy Mfg. Co.,* 610 F.Supp. 86, 89–90 (D.Colo.1985), *rev'd,* 877 F.2d 846 (10th Cir. 1989).

Plaintiffs appealed the May 9, 1985 dismissal to the United States Court of Appeals for the Tenth Circuit. On June 16, 1989, in an opinion by Judge McKay, the Tenth Circuit reversed Judge Moore's dismissal and remanded the case to the District Court. *Ayala v. Joy Mfg. Co.,* 877 F.2d 846 (10th Cir.1989). Quoting from *Berkovitz v. United States,* 486 U.S. 531, 547–48, 108 S.Ct. 1954, 1964, 100 L.Ed.2d 531 (1989), the Tenth Circuit reasoned:

"Because petitioners may yet show ... that the conduct challenged here did not

involve the permissible exercise of policy discretion, the invocation of the discretionary function exception to dismiss petitioners' ... claim was improper. *Berkovitz* [486 U.S. at 546], 108 S.Ct. at 1964. We conclude that plaintiffs have pled sufficient facts to withstand a motion to dismiss in light of *Berkovitz*. We therefore reverse the district court's grant of defendant's motion to dismiss and remand for further proceedings consistent with this opinion."

*Ayala*, 877 F.2d at 849.

On October 30, 1989, Plaintiffs sought leave to file their Third Amended Complaint based on additional facts and circumstances learned during discovery. When the United States objected, the Plaintiffs tendered a revised Third Amended Complaint containing a First Claim for Relief for "Active Negligence" and a Second Claim for Relief for "Negligent Failure to Inspect." On March 13, 1990, Magistrate Judge Abram granted the Plaintiffs leave to file their revised Third Amended Complaint, with certain modifications. Magistrate Judge Abram concluded that the Second Claim for Relief for "Negligent Failure to Inspect" was merely an attempt to re-assert the negligence claim that had been dismissed previously by Judge Moore, but noted that Judge Moore had never been presented the issue of a knowing or intentional failure by the inspectors to enforce mine regulations. Magistrate Judge Abram modified the Second Claim for Relief to remove the negligence allegation that was barred by the law of the case and to allege a knowing failure to enforce the regulations. The Second Claim for Relief became "Failure to Enforce Regulation." Magistrate Judge Abram also struck paragraph 8 of the Second Claim because it alleged negligence. On April 18, 1990, Judge Zita L. Weinshienk affirmed Magistrate Abram's March 13, 1990 Order. The Plaintiffs filed their Third Amended Complaint on September 17, 1990.

On April 26, 1990, this civil action was reassigned to Judge Daniel B. Sparr. On July 5, 1990, the United States moved to dismiss or for summary judgment on the grounds that the Plaintiffs' claims were barred by the misrepresentation exception to the FTCA and that the Second Claim for Relief was not actionable under the FTCA because it failed to state a duty under Colorado law. On February 27, 1991, this court issued a Memorandum Opinion and Order denying in part the United States' motion. On March 14, 1991, the United States moved for reconsideration of that Order regarding only the Second Claim for Relief. On April 11, 1991, the court granted the United States' Motion to Reconsider, reinstated the motion for summary judgment as to the Second Claim for Relief only, and advised the parties that the tort duty issue would be addressed at the trial commencing May 6, 1991.

On May 6, 1991, trial commenced on the two claims alleged in the Third Amended Complaint dated September 17, 1990. At the close of the Plaintiffs' case, the United States moved for dismissal pursuant to Fed.R.Civ.P. 41(b) on the grounds that the discretionary function exception barred both of the Plaintiffs' claims and that the Second Claim for Relief was not actionable under the FTCA because it failed to state a duty owed under Colorado law. The court declined to rule on those issues until the close of all the evidence. At the close of all the evidence, the United States renewed its motion to dismiss the Plaintiffs' claims.

### 2. Post–Trial History

On May 24, 1991, Plaintiffs moved pursuant to Fed.R.Civ.P. 15(b) to amend their complaint to conform to the evidence and tendered a Fourth Amended Complaint. On August 7, 1991, this court issued a Memorandum Opinion and Order that: (1) denied the Plaintiffs' Motion to Amend Complaint to Conform to Evidence; (2) made extensive findings of fact; (3) dismissed the Plaintiffs' First Claim for Relief as barred by the discretionary function exception to the FTCA; and (4) dismissed the Plaintiffs' Second Claim for Relief for insufficient evidence, absence of a tort duty under Colorado law, and as barred by the discretionary function exception to the FTCA. *Ayala v. United States*, 771 F.Supp. 1097 (D.Colo.1991), *aff'd. in part rev'd. in part*, 980 F.2d 1342 (1992). The Plaintiffs appealed the August 7, 1991 Order.

On November 25, 1992, in an opinion by Judge Wesley E. Brown sitting by designation, the Tenth Circuit Court of Appeals reversed this court's dismissal of the Plaintiffs' First Claim for Relief, concluding that the nature of the conduct challenged was not grounded in the exercise of policy judgment and was therefore not barred by the discretionary function exception. *Ayala v. United States*, 980 F.2d 1342, 1351 (10th Cir.1992). The Tenth Circuit affirmed the dismissal of the Plaintiffs' Second Claim for Relief. *Ayala*, 980 F.2d at 1353. Although the Plaintiffs asked the Tenth Circuit to direct a judgment of liability in their favor on the First Claim for Relief, the Tenth Circuit declined, stating that its ruling addressed only the application of the discretionary function exception. The Tenth Circuit specifically stated that "[n]umerous issues as to liability—including duty, breach, proximate cause, and damages—remain to be determined by the district court in the first instance." *Ayala*, 980 F.2d at 1351 n. 5. The Tenth Circuit specifically expressed "no opinion as to whether plaintiffs may recover under the facts found by the district court." *Ayala*, 980 F.2d at 1351 n. 5.

This court was therefore bound by the direction from the Tenth Circuit that "[n]umerous issues as to liability—including duty, breach, proximate cause, and damages—remain to be determined by the district court in the first instance." *Ayala*, 980 F.2d at 1351 n. 5. Accordingly, this court indicated that it would make a *de novo* review of the evidence in order to resolve the remaining issues of liability, including duty, breach, proximate cause, and damages. *See* May 19, 1993 Order; May 27, 1993 Order. The court ordered on both May 19, 1993 and May 27, 1993 that the evidence in the case would be limited to the evidence admitted at the May 1991 trial. The court ordered that no new evidence would be received.

On October 6, 1993, the court heard argument from counsel regarding the remaining issues on remand. The Plaintiffs argued that Colorado law imposes a duty of care on persons who provide technical assistance (as MSHA's Jack Marshall did in 1978) and that the findings made by the court in *Ayala*, 771

F.Supp. at 1097, are determinative of the issues of breach of that duty and proximate cause. The Plaintiffs asked that the court find the United States liable for the Plaintiffs' injuries incurred as a result of the explosion and that the court proceed to the damages trial.

The United States noted that several issues of liability remain undetermined, citing *Ayala* 980 F.2d at 1351 n. 5. The United States argued that it cannot be held liable for the Plaintiffs' injuries because: (1) Colorado law does not impose a duty upon the United States for the challenged conduct of Jack Marshall; (2) even if there were such a duty under Colorado law, Jack Marshall did not breach the duty; and (3) Jack Marshall's advice did not proximately cause the Plaintiffs' damages.

The court hereby adopts by reference its factual findings made in *Ayala*, 771 F.Supp. at 1097. The court must now determine the remaining issues of liability, including duty, breach, proximate cause, and damages in light of these facts.

### 3. The First Claim for Relief against the United States for "Active Negligence"

■ This claim against the United States is brought pursuant to the FTCA, 28 U.S.C. §§ 1346(b) and 2674. Generally, the FTCA constitutes a waiver of sovereign immunity for certain suits against the government arising from the negligence or wrongful conduct of its employees. *Dalehite v. United States*, 346 U.S. 15, 17, 73 S.Ct. 956, 958, 97 L.Ed. 1427 (1953). Pursuant to § 2674, liability may be imposed upon the United States "in the same manner and to the same extent as a private individual would be liable." The applicable law regarding any issues of duty is the "law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Aldrich Enterprises, Inc. v. United States*, 938 F.2d 1134, 1138 (10th Cir.1991). Accordingly, the court must resolve this claim under Colorado law. *Franklin v. United States*, 992 F.2d 1492, 1495 (10th Cir.1993).

■ Even where specific behavior of federal employees is required by federal statute, liability to the beneficiaries of that stat-

ute may not be founded on the FTCA if state law recognizes no comparable private liability. *Zabala Clemente v. United States,* 567 F.2d 1140, 1149 (1st Cir.1977), *cert denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978). The First Claim for Relief alleges negligence by the United States for Marshall's oral instruction to Brad Borquin for wiring the add-on lights to the Joy continuous miner. In Colorado, the elements of a negligence claim consist of the following: a duty owed by the defendant to the plaintiff, a breach of that duty, injury to the plaintiff, and a proximate cause relationship between the breach and the injury. *Connes v. Molalla Transport System, Inc.,* 831 P.2d 1316, 1320 (Colo.1992) (citations omitted); *Casebolt v. Cowan,* 829 P.2d 352, 356 (Colo.1992) (citations omitted); *Sager v. City of Woodland Park,* 543 F.Supp. 282, 298 (D.Colo.1982), citing Prosser, *The Law of Torts,* p. 143 (1973); *Perkins v. Greenberg,* 829 P.2d 461, 462–63 (Colo.App.1991) (citations omitted), *aff'd.* 845 P.2d 530 (1993).

### a. Duty Under Colorado Law

■ The initial question of whether a defendant owes a plaintiff a duty to act or refrain from acting in order to avoid injury is a question of law to be determined by the court. *Connes,* 831 P.2d at 1320 (citations omitted); *Casebolt,* 829 P.2d at 356 (citations omitted); *University of Denver v. Whitlock,* 744 P.2d 54, 57 (Colo.1987); *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 46 (Colo.1987); *Jefferson County School Dist. R–1 v. Justus,* 725 P.2d 767, 769 (Colo.1986). A negligence claim will fail if it is predicated on circumstances for which the law imposes no duty of care upon the defendant. *Connes,* 831 P.2d at 1320 (citations omitted); *Perkins,* 829 P.2d at 463 (citations omitted).

■ Legal duty is defined in terms of a standard of care. The source of the duty and the corresponding standard essential to the proper discharge of the duty may originate from a judicial decision or a legislative enactment. *United Blood Services v. Quintana,* 827 P.2d 509, 519 (Colo.1992) (citation omitted); *Board of County Com'rs. v. Moreland,* 764 P.2d 812, 816 (Colo.1988); *Moldovan v. State of Colorado,* 829 P.2d 481, 483 (Colo.

App.1991) (citation omitted), *aff'd.,* 842 P.2d 220 (1992). In determining whether a duty should be recognized, a court must consider many factors, including, for example, the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, the consequences of placing the burden upon the actor, and any additional elements disclosed by the particular facts of the case. *Connes,* 831 P.2d at 1320 (citations omitted); *Casebolt,* 829 P.2d at 356 (citations omitted).

■ The breach of a statutory duty is actionable only by one who is a member of the class the statute was designed to protect and only where the injury suffered by such person is the type of injury which the statute was enacted to prevent. *Leake v. Cain,* 720 P.2d 152, 162 (Colo.1986). In determining whether a defendant owes a duty to a particular plaintiff, the law has long recognized a distinction between action and failure to act, that is, between active misconduct working positive injury to others and passive inaction or failure to take steps to protect others from harm. *Whitlock,* 744 P.2d at 57 (citation omitted). By misfeasance the defendant has created a new risk of harm to the plaintiff, while by nonfeasance the defendant has at least made the plaintiff's situation no worse and has merely failed to benefit the plaintiff by interfering in his affairs. *Whitlock,* 744 P.2d at 57 (citation omitted).

The Plaintiffs allege misfeasance by Jack Marshall. *See* Plaintiffs' Brief filed July 15, 1993, p. 10. Plaintiffs argue that Colorado law imposed a duty of care on the United States when Jack Marshall provided technical assistance to the coal mine operator, Mid–Continent. In support of their argument, Plaintiffs cite *Leake,* 720 P.2d at 160, *Blue Flame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 587 (Colo.1984), and *Metropolitan Gas Repair Service, Inc. v. Kulik,* 621 P.2d 313, 317 (Colo.1980).

■ Whereas previously it would have been necessary to inquire whether a duty owed by a governmental entity was a general duty owed to the public at large and thus not enforceable by an individual or a special duty

imposed for the benefit of particular individuals or classes and therefore privately enforceable, after *Leake*, 720 P.2d at 160, such a distinction is no longer relevant. *Moreland*, 764 P.2d at 816. In *Leake*, 720 P.2d at 160, the Colorado Supreme Court abolished the public duty rule in Colorado, stating that for purposes of determining liability in a negligence action, the duty of a public entity shall be determined in the same manner as if it were a private party. Thus, the liability of the United States in this case must be determined in the same manner as if it were a private party.

■ None of the cases relied upon by the Plaintiffs recognize a duty of care for the provision of technical assistance. First, *Blue Flame*, 679 P.2d at 587–88, addressed the degree of care required of one who dispenses a dangerous substance into the stream of commerce, specifically propane suppliers. The United States and Jack Marshall are not alleged to have been suppliers of any inherently dangerous substance. Next, in *Kulik*, 621 P.2d at 318, the common law duty of a service contractor to perform its work with reasonable care and skill was derived from the contractual relationship with the decedent. Customers who hire service contractors were held to be justified in expecting reasonable care and competence in the performance of a service contract. *Kulik*, 621 P.2d at 318. The instant case does not involve any contractual relationship for the compensated provision of services. Finally, the *Leake* court concluded that the respondents were not included within the class of persons the relevant statutory duty was designed to protect and, therefore, the petitioners did not have a duty to the respondents decedents. 720 P.2d at 162–63. *Leake* does not support recognition of a duty of care owed by the United States for Marshall's provision of technical assistance. The court concludes that no duty of care for the technical assistance provided by Marshall arises out of Colorado's judicial decisions.

This case is more akin to *Moreland*, 764 P.2d at 816–21, where the Colorado Supreme Court held that a private civil liability remedy will not be recognized for injuries resulting from a breach of obligations legislatively imposed on a governmental entity and unknown at common law absent a clear expression of legislative intent. If the Colorado legislature intended to impose tort liability for negligent technical assistance, then its expression of this intent "should be loud and clear, by authorizing the remedy." *Quintano*, 495 P.2d at 1139. There are certain fields, such as sovereign immunity, in which the courts should leave the establishment of substantive law to the legislative branch, *Evans v. Board of County Com'rs*, 174 Colo. 97, 482 P.2d 968, 972 (1971), and not attempt to infer legislative intent, *Quintano v. Industrial Commission*, 495 P.2d 1137, 1139 (Colo. 1972). The Colorado legislature has not enacted a duty of care for the technical assistance provided by Marshall.

■ The Plaintiffs further allege that their First Claim for Relief derives from 30 U.S.C. § 952(b) and the coal mine electrical inspectors' job description (marked for identification as Plaintiffs' Exhibit 32) as sources of the duty to be imposed on the United States. 30 U.S.C. § 952(b) provides:

> The Secretary shall, to the greatest extent possible, provide technical assistance to operators in meeting the requirements of this Act and in further improving the health and safety conditions and practices in coal or other mines.

Congress enacted the Federal Coal Mine Health and Safety Act of 1969, redesignated the Federal Mine Safety and Health Act in 1977 (the Act), for the express purpose of protecting the health and safety of coal and other miners. 30 U.S.C. § 801. The Secretary of Labor is empowered by statute to promulgate administrative regulations that establish general and mandatory health and safety standards with which all mine operators must comply. 30 U.S.C. § 811. The Secretary must monitor the mining industry's compliance with mine health and safety standards. 30 U.S.C. §§ 813, 814, 815. The regulations require mine operators to compile comprehensive plans addressing certain subjects, such as methane concentrations and lighting. *See* 30 U.S.C. § 863; 30 C.F.R. §§ 75.313, 75.1719–75.1719–4. These plans are submitted to an MSHA district manager for review and approval. Once approved, the

plans become mandatory in the sense that a violation of the approved plans is a violation of the Act. *Cooley v. United States,* 791 F.Supp. 1294, 1302–03 (E.D.Tenn.1992) (citation omitted).

The court does not find that the language of § 952(b) imposes a tort duty on the United States under Colorado law. The United States owed no direct duty to the Plaintiffs, rather the United States had only a general regulatory duty to see that coal mine operators complied with federal regulations. *See Moldovan,* 829 P.2d at 483. No MSHA statute, regulation, or policy sets forth any specific course of action for MSHA inspectors to follow with regard to providing technical assistance. The Act does not prescribe a course of action for inspectors to follow in conducting inspections and investigations, but allows them to exercise judgment and choice. 30 U.S.C. § 813(a). Importantly, the Act places the primary duty of conforming with safety standards on the mine operators and the miners themselves. 30 U.S.C. § 801(e), § 820. The court concludes that there is no tort duty owed by the United States under Colorado law for Marshall's provision of technical assistance to the coal mine operator.

■ The coal mine electrical inspectors' job description provides in pertinent part:

*Duties:*

As an inspector who specializes in issues and problems relating to electrical facilities and systems in coal mines, conducts onsite inspections and investigations and gives advice and assistance concerning electrical matters relating to a variety of coal mines. For example: ...

—Advises mine operators on planning, operating, and maintaining electrical systems that safely meet the needs of their mines....

(Plaintiffs' Exhibit 32 marked for identification). Unfortunately, Plaintiff's Exhibit 32 was not admitted into evidence at the trial. Thus, the court cannot consider it.

■ The court's conclusion that there is no tort duty owed by the United States for Marshall's provision of technical assistance is further strengthened by the fact that penal-

ties are specifically provided at 30 U.S.C. § 820 against mine operators who violate the provisions of MSHA. It must be assumed that specific remedies designated by the legislature exclude all others. *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370, 1378 (Colo. App.1982), *aff'd,* 691 P.2d 1138 (Colo.1984); *Silverstein v. Sisters of Charity,* 38 Colo.App. 286, 559 P.2d 716, 718 (1976); *see Quintano,* 495 P.2d at 1138–39.

■ The court's conclusion that there is no tort duty owed by the United States for providing technical assistance to a coal mine operator is also supported by Judge Moore's conclusion in *Ayala,* 580 F.Supp. at 525–26, that the inspection procedures of the Act create no tort duty on the part of the government toward the Plaintiffs' decedents.

"The Mine Safety Act places the primary responsibility for providing a safe and healthful working environment on the mine operator. The government, by enacting health and safety regulations, does not thereby become an insurer for the neglect of others simply because it failed to insure compliance with established standards of conduct....

In addition, there is no private cause of action for violations of the Mine Health Safety Act ... the fact that no civil remedy was provided for violations of the Act is a factor which militates against the imposition of tort liability upon the government or government officials for alleged negligence in the performance of their statutory duties."

*Ayala,* 580 F.Supp. at 526. Judge Moore relied on the reasoning of case law from other jurisdictions which established that a government inspection does not constitute the rendering of services that would subject the United States to liability to a third person for physical harm resulting from the failure to exercise reasonable care in the inspection of a mine. *Ayala,* 580 F.Supp. at 526. Judge Moore's ruling was never appealed. *Ayala,* 980 F.2d at 1351 n. 6.

■ The court's conclusion that there is no tort duty owed by the United States for providing technical assistance to a coal mine operator is also supported by consideration

of the factors for determining whether a duty should be recognized under Colorado law. The Act places the primary duty of conforming with safety standards on the mine operators and the miners themselves. Mid–Continent employed a mining engineer, Brad Borquin, who was responsible for submitting the application to MSHA for approval of the add-on lighting system. The Act and the regulations required the mine operator to submit the lighting plan to the MSHA district manager for review and approval. Borquin showed Marshall only an electrical schematic photocopied out of the Joy parts book. (Trial transcript Vol. II p. 392). While Borquin considered Marshall's comment in preparing his diagram of the lighting connection upstream from the methane monitor (Plaintiff's Trial Exhibit 7), Marshall never saw Borquin's diagram and the diagram was not submitted with the lighting application for MSHA approval. In light of the Act's language negating the idea that responsibility for mine safety has been shifted to the government, it was unreasonable for Borquin to rely on Marshall's single instruction.

In addition, the foreseeability and likelihood of injury from Marshall's comment is not sufficient to impose a duty on the United States under Colorado law for providing technical assistance. See Raymer v. United States, 660 F.2d 1136, 1143–44 (6th Cir.1981), cert. denied, 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982). After weighing the foreseeability and likelihood of injury from Marshall's comment, the social utility of the government's conduct, the magnitude of the burden of guarding against any injury, and the consequences of placing the burden upon the government, see Connes, 831 P.2d at 1320 (citations omitted); Casebolt, 829 P.2d at 356 (citations omitted), the court recognizes no tort duty owed by the United States under Colorado law for providing technical assistance to Mid–Continent.

In accordance with the above analysis, the Plaintiffs' First Claim for Relief must be dismissed for failure to establish a *prima facie* case of negligence.

### b. Breach of Duty

Even if the United States owed a duty to the Plaintiffs under Colorado law, the court concludes that Marshall did not breach such duty.

 The standard of care that must be met in order to satisfy a recognized duty and thereby avoid breach is that of reasonable care in light of the apparent risk. *Casebolt*, 829 P.2d at 356 (citation omitted). Colorado caselaw has espoused the general principle that a legal duty to use reasonable care arises in response to a foreseeable and unreasonable risk of harm to others. *Quintana*, 827 P.2d at 519 (citations omitted). In ordinary negligence cases, an actor is required to conform his or her conduct to a standard of objective behavior measured by what a reasonable person of ordinary prudence would or would not do under the same or similar circumstances. Negligence has been defined as conduct which involves an unreasonably great risk of causing damage or conduct which falls below the standard established by law for the protection of others against unreasonably great risk of harm. *Sager*, 543 F.Supp. at 298 (citation omitted). Parties owe a duty to protect against their conduct that causes unreasonable risks of harm to all those within the foreseeable scope of the risk. *Sager*, 543 F.Supp. at 298, citing *Palsgraf v. L.I.R.R.*, 248 N.Y. 339, 162 N.E. 99 (1928) (Cardozo, J.).

Although the court previously found that Marshall's instruction to Borquin was incorrect, *Ayala*, 771 F.Supp. at 1105, under the circumstances as further examined by the court in light of the remand from the Tenth Circuit, the inaccurate instruction did not constitute a breach of Marshall's duty.

 When asking Marshall where to connect the add-on lights, Borquin showed Marshall only an electrical schematic photocopied out of the Joy parts book. (Trial Transcript Vol. II p. 392). Borquin then incorrectly modified the McJunkin diagram (Plaintiffs' Trial Exhibit 15 p. 5) himself, without any instruction from Marshall. (Trial Transcript Vol. II p. 462–63, 467). Borquin knew that MSHA regulations required all power to be cut off from the continuous miner except for the methane monitor. (Trial Transcript Vol. II p. 430). Borquin knew that Marshall "was

not authorizing anything," but merely assisting Borquin in preparing documents to be reviewed by the district MSHA office. (Trial Transcript Vol. II p. 438). Borquin admitted that had he followed the McJunkin instructions (Plaintiffs' Trial Exhibit 15 p. 5) and Marshall's instruction instead of preparing his own diagram (Plaintiffs' Trial Exhibit 7), the lights would have properly deenergized. (Trial Transcript Vol. II p. 460–62). Borquin's inaccurate diagram, which Marshall and MSHA never saw, was distributed to the mine electricians for use in installing the add-on lights. (Trial Transcript Vol. II p. 394–95). Not all of the mine electricians received Borquin's inaccurate diagram and at least some of the mine electricians were able to install the add-on lights correctly, allowing the power to continue flowing to the methane monitor. (Trial Transcript Vol. II p. 745–48, 756–64). The evidence indicated that a competent mine electrician could have installed the add-on lights in two ways and still properly deenergized all of the equipment except the methane monitor. (Trial Transcript Vol II pp. 758–764; Vol. IV pp. 59–60, 65–76).

Borquin did not provide Marshall with adequate information and did not submit his inaccurate drawing to Marshall or MSHA for approval. While Marshall's comment regarding where to connect the add-on lights was inaccurate and incomplete, the comment was fleeting and made on the basis of inadequate information provided to Marshall by Borquin. In light of the Act's imposition of ultimate responsibility for mine safety on the mine operators, Borquin was also unreasonable in relying on Marshall's comment. The court concludes that Marshall did not engage in conduct that unreasonably created great risk of harm to all those within the foreseeable scope of the risk. Under the circumstances Marshall's conduct did not fall below the standard established by law for the protection of others against unreasonably great risk of harm. Accordingly, Marshall did not breach any duty of care in providing technical assistance to Mid–Continent.

*c. Proximate Cause Relationship*

Even if the United States owed a duty to the Plaintiffs under Colorado law, and even if

Marshall breached that duty, the court concludes that there were substantial, unforeseeable intervening causes that would relieve the United States from liability.

Colorado law provides that a negligent party is liable for his or her negligence only if that negligence was the proximate cause of the plaintiff's injury. *Berg v. United States*, 806 F.2d 978, 981 (10th Cir. 1986) (citations omitted). Proximate cause is a fact question in Colorado unless the facts are undisputed and reasonable minds can draw only one conclusion from them. *Berg*, 806 F.2d at 981 (citations omitted). An act is the proximate cause of an injury if the act was a substantial factor in bringing about the injury. *Berg*, 806 F.2d at 981 (citations omitted).

"Substantial factor" has been defined as conduct "of sufficient significance in producing the harm as to lead reasonable persons to regard it as a cause and to attach responsibility." *Berg*, 806 F.2d at 981–82 (citations omitted). Where several events may have brought about the harm to the plaintiffs, if an event other than the defendant's negligence appears predominant, the defendant's negligence cannot be considered a substantial factor. *Smith v. State Compensation Insurance Fund*, 749 P.2d 462, 464 (Colo.App.1987). "Some other event which is a contributing factor in producing the harm may have such a predominant effect in bringing it about as to make the effect of the actor's negligence insignificant and, therefore, to prevent it from being a substantial factor." *Smith*, 749 P.2d at 464, quoting Restatement (Second) Torts § 433 (Comment to Clause (a)) (1965).

An intervening cause is some action by a third party which relieves the defendant of liability. *White v. Caterpillar, Inc.*, 867 P.2d 100, 108 (Colo.App.1993). Intervening cause is a negligence concept that relieves a defendant from liability if the intervening cause was not reasonably foreseeable. *White*, 867 P.2d at 108; *Jones v. Caterpillar Tractor Co.*, 701 P.2d 84, 86 (Colo. App.1984). An intervening cause does not break the chain of causation unless it is

unforeseeable. *Sager v. City of Woodland Park*, 543 F.Supp. 282, 298 (D.Colo.1982).

 The court previously found that "[T]he explosion was directly related to the improper connection of the add-on lights on the Joy CM 2228 to the power source, in accordance with Marshall's incorrect and inadequate advice to Borquin." *Ayala*, 771 F.Supp. at 1105. Considering now the issues of liability, including duty, breach, proximate cause, and damages, *Ayala*, 980 F.2d at 1351 n. 5, the court finds that there were substantial, unforeseeable intervening causes that would relieve the United States from liability for the Plaintiffs' damages.

The conduct of Brad Borquin was one unforeseeable intervening cause. Borquin knew that Marshall "was not authorizing anything." (Trial Transcript Vol. II p. 438). Borquin incorrectly modified the McJunkin diagram without any instruction from or knowledge by Marshall. (Trial Transcript Vol. II p. 462–63, 467). Neither Marshall nor MSHA ever saw Borquin's inaccurate diagram (Plaintiffs' Trial Exhibit 7) because Borquin did not submit the diagram to Marshall or MSHA for approval. Borquin admitted that had he followed the McJunkin instructions (Plaintiffs' Trial Exhibit 15) and Marshall's instruction instead of preparing his own diagram (Plaintiffs' Trial Exhibit 7), the lights would have properly deenergized. (Trial Transcript Vol. II p. 460–62). Apparently, Borquin on occasion even intentionally inserted errors in the documents submitted for MSHA approval to play "the game with the inspectors . . . ." (Trial Transcript Vol. II pp. 387–88). Borquin's conduct was an unforeseeable contributing factor that had such a predominant effect in bringing about the harm to the Plaintiffs as to make the effect of Marshall's alleged negligence insignificant and, therefore, to prevent it from being a "substantial factor." *See Smith*, 749 P.2d at 464 (citation omitted).

Mid–Continent's installation of a manually operated light switch and the pinching of a piece of wire leaving an opening in the "explosion-proof" compartment was another intervening cause not reasonably foreseeable. The explosion was ignited by an electrical arc within the enclosure housing the light switch for the add-on lights on the Joy continuous miner. *Ayala*, 980 F.2d at 1345–46; Plaintiffs' Trial Exhibit 3 pp. 46–47; April 12, 1991 Pretrial Order paragraph IV. 3. On or about April 6, 1981, Mid–Continent employees replaced the old explosion-proof compartment cover plate of the Joy CM 2228 miner with a new cover plate containing a light switch so that the lights could be operated manually. *Ayala*, 771 F.Supp. at 1103. The arc occurred when the light switch was turned to the "off" position. Although the enclosure housing the light switch was designed to be explosion-proof, the investigation revealed that the light switch cover plate on the compartment had been bolted down pinching a piece of wire in the flange of the compartment. *Ayala*, 980 F.2d at 1346. This left an opening in the compartment sufficient to allow methane gas to migrate into it. The electrical arc created by the light switch apparently ignited methane within the compartment, causing flame to be expelled through the opening and into the atmosphere outside the compartment, resulting in the explosion. *Ayala*, 980 F.2d at 1346. Despite Marshall's incorrect comment to Borquin, Mid–Continent's conduct in installing a manually operated light switch and compromising the explosion-proof compartment constituted a predominant intervening cause which broke the chain of causation and would relieve the United States of liability for the Plaintiffs' damages. *See White v. Caterpillar, Inc.*, 867 P.2d 100, 108 (Colo.App.1993); *Jones v. Caterpillar Tractor Co.*, 701 P.2d 84, 86 (Colo. App.1984).

There was also ample evidence of Mid–Continent's poor maintenance practices as an intervening cause. Jesus Meraz was the master mechanic in the Dutch Creek No. 1 mine at the time of the explosion and for two years prior to the explosion. The evidence indicated that the electrical circuits under Meraz's supervision were "not up to the standards that they should have been" and that safety devices were "bridged . . . out or jumpered out." (Trial Transcript Vol. II pp. 736–37, 751; Defendant's Trial Exhibit B–3). Such maintenance practices constituted intentional violations of mandatory safety standards. (Trial Transcript Vol. IV pp. 20–23,

28–29). The evidence also demonstrated other instances of inadequate maintenance practices. (Trial Transcript Vol IV pp. 33–42, 92–94; Defendant's Trial Exhibits B–3, C–3, D–3, P, and Z–3; Martinez deposition pp. 92–94). Mid–Continent's poor maintenance practices constituted another intervening cause not reasonably foreseeable which would relieve the United States of liability for the Plaintiffs' damages.

### 4. Conclusion

Because the court determines that the Plaintiffs have not proved the necessary elements of a negligence claim against the United States under Colorado law, judgment on the Plaintiffs' First Claim for Relief for "Active Negligence" must be entered in favor of the Defendant and against the Plaintiffs. The court need not reach the final issue of damages.

IT IS, THEREFORE, ORDERED:

1. The United States' oral Motion to Amend the Pretrial Order is DENIED.

2. Judgment shall be entered in favor of the Defendant and against the Plaintiffs on the Plaintiffs' First Claim for Relief.

3. No further claims remaining, this civil action is DISMISSED.