Derek McMULLEN, Howard Wilson, Joann Wilson d/b/a/ Howie's Recycling, and the Farm Bureau Mutual Insurance Co., Inc., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civil Action No. 94–1012–FGT.

United States District Court, D. Kansas.

Oct. 9, 1996.

Don D. Gribble, II, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for plaintiffs.

Jackie N. Williams, Emily B. Metzger, Office of United States Attorney, Wichita, KS, Paul J. Boudreaux, Paul F. Figley, Frank W. Hunger, U.S. Department of Justice, Civil Division, Washington, DC, for defendant.

### MEMORANDUM AND ORDER

THEIS, District Judge.

This case arises out of an explosion on the premises of Howie's Recycling, which is located in Manhattan, Kansas. Plaintiffs Joann and Howard Wilson are the owners of Howie's Recycling, and plaintiff Derek McMullen was at all times relevant to this action employed at Howie's Recycling. Plaintiff Farm Bureau Mutual Insurance Co. was the insurance carrier for Howie's Recycling. This matter is before the court on the United States' motions to dismiss and for summary judgment. (Doc's 7 & 64). The United States has also filed a motion to exclude certain plaintiffs' witnesses from the pretrial order. (Doc. 75).

### I. Factual Background

On or about April 10, 1991, a Mr. Scott Roads brought to Howie's Recycling in Man-

hattan, Kansas, a number of discarded or abandoned items of military ordnance which he apparently[1] had found on the impact zones at Ft. Riley, Kansas. There is no contention that Mr. Roads had authority or permission to go onto the Ft. Riley impact zones or to take discarded ordnance from Ft. Riley.

April 10, 1991 was McMullen's third day on the job at Howie's. McMullen attempted to smelt the items Mr. Roads had brought, having never before smelted military ordnance. Some of the military ordnance exploded. It was later learned that among the items Mr. Roads had brought to Howie's were highly explosive anti-tank ("HEAT") rounds, which are exceptionally dangerous. The explosion caused personal injury to McMullen and damage to the Howie's Recycling plant. Farm Bureau paid claims for McMullen's injuries and the Wilsons' property damage.

Plaintiffs allege that discarded military ordnance has intrinsic value. Plaintiffs allege further that Ft. Riley personnel knew of multiple occasions of persons trespassing onto Ft. Riley property for the purpose of taking military ordnance. Plaintiffs contend that the United States is liable for their damages, which resulted from what they argue is the negligence of defendant's employees at Ft. Riley in failing to take the proper precautions against the theft of military ordnance from Ft. Riley. Plaintiffs also allege various other violations of military regulations governing range operation.

## II. Standard of Review

The defendant has brought motions to dismiss and for summary judgment, relying in part on issues relating to the court's subject matter jurisdiction. Normally, when deciding a motion to dismiss for lack of subject matter jurisdiction, the court can consider evidence outside the pleadings without converting the motion to one for summary judgment under Fed.R.Civ.P. 56. *Holt v. United States,* 46 F.3d 1000, 1002–03 (10th Cir.1995). In other words, the court does not presume the truth of plaintiff's allegations, but is free

to weigh the evidence and satisfy itself that it has jurisdiction. *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990). However, where the question of subject matter jurisdiction is intertwined with the merits of the case and subject matter jurisdiction depends on the same statute which provides the cause of action, the motion is treated as one for summary judgment. *Id.* at 1003. In this case the jurisdiction question is intertwined with the merits of plaintiffs' claims, and both matters are determined under the FTCA. Therefore, the court considers the defendant's motion under the standards for summary judgment under Rule 56.

The court is familiar with the standards governing the consideration of a motion for summary judgment. The Federal Rules of Civil Procedure provide that summary judgment is appropriate when the documentary evidence filed with the motion "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A principal purpose "of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The burden at the summary judgment stage is similar to the burden of proof at trial. The court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact on

---

**1.** Defendant argues there is no relevant evidence to support plaintiffs's contention that the ordnance involved in this case came from Ft. Riley.

Because of the court's ruling on the other issues in this case, the court need not address that argument.

its claim(s). Rule 56, however, imposes no requirement on the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553 (emphasis in original). Once the moving party has properly supported its motion for summary judgment, the nonmoving party may not rest upon mere allegations or denials, but must set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56. Fed.R.Civ.P. 56(e). Each party must demonstrate to the court the existence of contested facts on each claim it will have to prove at trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. The court reviews the evidence on summary judgment under the substantive law and based on the evidentiary burden the party will face at trial on the particular claim. *Anderson,* 477 U.S. at 254, 106 S.Ct. at 2513.

## III. Federal Tort Claims Act

The court must first address the defendant's two arguments which arguably relate to subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). First, defendant argues that its actions are protected by the discretionary function exception to the Federal Tort Claims Act. 28 U.S.C. § 2680. Second, the defendant contends that there is no liability under the Federal Tort Claims Act because a private party under the circumstances of this case would not be liable under Kansas law.

■ Under the Federal Tort Claims Act ("FTCA") the government waives its sovereign immunity with respect to certain injuries caused by government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). As a general rule, the United States is liable to the same extent that a private person would be under the law of the place where the act occurred. *Id.* In this case, the court applies Kansas law to the plaintiffs' claims of negligence. *Ayala v. United States,* 49 F.3d 607, 611 (10th Cir. 1995).

■ There is an exception to the broad waiver of immunity for claims based on the exercise of or failure to perform discretionary functions. 28 U.S.C. § 2680(a) states that there is no liability for "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." "The discretionary function exception marks the boundary between Congress' willingness to impose tort liability upon the United States and the desire to protect certain activities from exposure to suit by 'private individuals.' " *Johnson v. United States Dep't of Interior,* 949 F.2d 332, 335 (10th Cir.1991) (quoting, *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 808, 104 S.Ct. 2755, 2762, 81 L.Ed.2d 660 (1984)). Exceptions to liability are to be narrowly construed. *Id.* at 336. Where the discretionary function exception applies, the government has not waived its sovereign immunity, and the courts are without jurisdiction to hear the plaintiffs' claims of negligence. *See Domme v. United States,* 61 F.3d 787, 789 (10th Cir.1995).

■ Determining whether the discretionary function exception applies requires a two-step analysis. *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, the court asks whether the governmental conduct at issue involves an element of choice or judgment. *Id.* at 536, 108 S.Ct. at 1958. The discretionary function exception does not shield conduct that is mandated by federal statute, regulation or policy. *Domme v. United States,* 61 F.3d 787, 789 (10th Cir.1995). At the second step, the court considers whether the judgment exercised is of the type the discretionary function exception is designed to shield. *Berkovitz,* 486 U.S. at 536, 108 S.Ct. at 1958. The discretionary function exception is intended to protect only those actions and decisions which are based on public policy considerations. *Domme,* 61 F.3d at 790.

■ As stated above, the FTCA generally makes the government liable only to the same extent that a private person would be under the applicable state law. Even where government officials have violated a federal statutory or regulatory mandate, a plaintiff does not state a claim for which relief can be

granted for damages resulting from such violation if there is no comparable duty under state law. *Ayala,* 49 F.3d at 611.[2] Therefore, as to any action/failure which falls outside the discretionary function exception, the court must determine whether plaintiffs have stated a claim that the United States has breached any duty to which a landowner or user of explosive devices would be subject under Kansas law. *See Domme,* 61 F.3d at 789, *Ayala,* 49 F.3d at 611.

## IV. Analysis of Plaintiffs' Claims

As an initial matter, the court must determine what conduct by government employees is at issue. *Domme,* 61 F.3d at 790. The plaintiffs allege that Fort Riley personnel were negligent in three chief respects: (1) failing to fence the area around the main impact area; (2) failing to establish guards or patrols around the impact area; and (3) leaving live ordnance on the open ground rather than establishing and maintaining a program for removal of duds. Additionally, plaintiffs allege a lack of compliance with regulations which require (1) recording duds, (2) use of local media to educate the public on the dangers associated with ammunition, (3) particular wording of the signs around the impact area, (4) placement of signs around range borders, (5) coverage of "danger areas," and (6) publication of standard operating procedures. The court will address the application of the discretionary function exception and/or whether a duty is imposed by state law as to each violation plaintiffs allege.

### A. Fencing

■ Plaintiffs contend that Army regulations require a fence or other physical barrier surrounding the main impact area at Ft. Riley. A.R. 385–63, § 2–1g provides that the installation commander will "survey and post range boundaries and off-limit areas to prevent trespass and entry by unauthorized personnel into surface danger zones and impact areas." Section 2–1i requires the installation commander to "post range guards, barriers,

limit of fire markers, and signals." Contrary to plaintiffs' argument, the words "barriers" and "boundaries" are insufficient, under a reasonable interpretation of the regulation, to create a mandatory duty to construct a fence or other physical barrier around the entire impact area. The decision whether to fence the main impact area is largely an economic one. It is undisputed that the main impact area is approximately five miles long and four to five miles wide. There are also issues of military efficiency, particularly, maneuverability throughout the base. The decision whether to fence the main impact area, then, is discretionary and is protected by the discretionary function exception to the FTCA.

### B. Guarding

■ Plaintiffs allege that Ft. Riley had "no meaningful guarding" around the main impact area. A.R. 385–63, 2–6 provides: "All normal approaches to the danger area will be covered. Range guards properly instructed in duties will be used or appropriate barriers with signs will be posted."[3] The section does not define "danger area." The term appears to be used interchangeably with "danger zone," which is defined at the captions to Figures 1–1 and 1–2 as "that segment of the range area which is endangered by a particular type of weapon firing." Figures 1–1 and 1–2 are diagrams of the areas within the danger zone. Although § 2–6 is not expressly limited, it is clear from the context of that section that it deals with live firing situations. Sections 2–3 through 2–5 and § 2–7 all relate to range control during live firing. Furthermore, the use of the term "danger area" is not used in other sections of A.R. 385–63 which do not concern live firing.

There is no allegation or evidence that the military ordnance at issue in this case was taken while firing was occurring. Accordingly, § 2–6 does not apply to this case. Furthermore, there is no evidence that Scott Roads entered the impact area from a "nor-

---

2. The Eleventh Circuit Court of Appeals has held that this is a jurisdictional issue. *Lawrence,* 919 F.2d at 1528. In other words, the government does not waive sovereign immunity beyond the duties imposed by state law.

3. The court addresses § 2–5 separately below.

mal approach." Section 2–6 only requires guards or barriers at normal approaches. Thus, there is no basis for a reasonable fact finder to conclude that plaintiffs' damages were caused by a violation of § 2–6.

Plaintiffs also cite § 2–1c, which requires "maintain[ing] and polic[ing] ranges, maneuver areas, and training facilities." However, contrary to plaintiffs' suggestions, the word "policing" does not mean posting guards or having personnel patrol the area. Rather, in the Army it means to keep the area clean and orderly. (Bowen deposition, p. 104). *See also* Random House Dictionary of the English Language 1113 (1979).

### C. Dud Removal

■ F.R.Reg. 385–12 is the Range and Training Safety regulation for Ft. Riley. Section 7–8a of that regulation defines a dud as "any explosive munition such as a fuze [sic], projectile, grenade, artillery simulator, or mine which has been fired from a weapon or otherwise activated and failed to detonate." There are several sections of A.R. 385–63 which pertain to handling of duds, most of which are wholly unrelated to this case. Although plaintiffs identify sections 2–8g, 4–6c, and 4–7, there is no evidence that plaintiffs' damages were caused by a violation of any of these sections. Section 2–8g requires the establishment of a procedure for unauthorized personnel to turn in ammunition. Ft. Riley has a regulation, F.R. 385–12, § 7–8, which sets forth the procedure Ft. Riley personnel are to follow upon discovery of a dud. Section 4–6c requires clearing duds from dedicated improved conventional munitions (ICM) impact areas. There is neither an allegation nor any evidence that the dud at issue in this case was taken from a dedicated ICM impact area.[4] Section 4–7 sets forth the procedure for destruction of duds. Plaintiffs here do not suggest that they were damaged by the improper destruction of duds. Because plaintiffs' damages were not caused by violations of these sections, defendant would not be liable under Kansas law and is, accordingly, not liable under the FTCA.

Section 2–1h requires clearing duds before allowing people to enter an area. This section does not, as plaintiffs contend, require clearing duds in all areas. Rather, duds are to be cleared from areas which people will be allowed to enter. There is no evidence that Ft. Riley allowed people to enter its main impact area. To the contrary, all evidence shows that if Scott Roads took the duds from Ft. Riley's main impact area, he was a trespasser. Whether Ft. Riley took all the required steps to keep trespassers out of the area is a separate question and is addressed above.

A.R. 385–63 does not, under a reasonable interpretation, require regular removal of duds from Ft. Riley's main impact area. Decisions regarding the handling of duds on the impact area are left to the discretion of Ft. Riley personnel. These decisions are based on such considerations as the safety of civilian and military personnel and the best allocation of scarce human and economic resources. The decisions regarding removal of duds from the main impact area, then, are discretionary functions under the Federal Tort Claims Act, and the court is without jurisdiction to hear plaintiffs' claims on that subject.

### D. A.R. 385–63, § 2–5

Section 2–5 states in relevant part:

Precautions will be taken to prevent—

. . . . .

c. Handling or removal of unexploded ammunition (duds) by unauthorized personnel.

d. Entry into the impact area by all unauthorized personnel until it has been thoroughly searched and any duds found are destroyed by qualified personnel in accordance with TM 9–1300–206 and volume 1, Naval Sea Systems Command Ordnance Pamphlet 5. . . .

■ Plaintiffs contend § 2–5 creates a mandatory duty on the part of Ft. Riley personnel to fence the main impact area, post guards around the impact area, and/or clear

---

4. Furthermore, even on ICM impact areas, the regulation leaves decisions regarding scheduling and procedures for dud removal to the installation commander. A.R. 385–63, § 4–6c.

the area of duds. The court disagrees. Although the language is not permissive, it is vague. It does not provide a fixed or readily ascertainable standard on which to rely. *See Miller v. United States,* 710 F.2d 656, 663 (10th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983). Interpretation and implementation of § 2–5 are thus left to the discretion of officials at the base and involve policy considerations rather than expert evaluations of a mandatory duty. *Id.* The discretion exercised is the type which the FTCA is intended to protect. Decisions regarding how to prevent unauthorized persons from coming into contact with military ordnance implicate such policies as military efficiency,[5] safety of civilian and military personnel,[6] and use of limited economic resources.[7]

Section 1–5c(3), which requires development of local procedures to minimize the risk of personal injury and property damage is similarly vague, and cannot form the basis of an action under the FTCA.

### E. Other Regulations

 As stated above, a violation of a statutory or regulatory mandate does not lead to liability under the Federal Tort Claims Act unless there is a comparable duty under state law. Plaintiffs allege Ft. Riley personnel failed to carry out the following regulatory mandates: recording the location of duds (A.R.865–63, §§ 2–1p(3), 4–2d(3), 4–4e); particular wording/placement of warning signs (A.R.865–63, §§ 2–8d, 2–8f); publication of standard operating procedures (A.R. 865–63, § 2–1b); and use of the media to educate the public on the dangers of handling military ordnance/ammunition (A.R.865–63, § 2–10c). These regulations are not comparable to any duty imposed on landowners, or persons dealing with explosives, under Kansas law. Furthermore, no reasonable fact finder could conclude that any failure to record the location of duds or to publish stan-

dard operating procedures was a proximate cause of plaintiffs' damages. Accordingly, the plaintiffs state no claim for which relief can be granted regarding violations of these regulations.

### V. Conclusion

The court grants defendant's motion for summary judgment (Doc. 64). The court need not consider the additional arguments defendant presents in support of its motion for summary judgment. Likewise, defendant's motion to dismiss (Doc. 7) and its motion to exclude plaintiffs' witnesses (Doc. 75) are moot.

**IT IS BY THIS COURT THEREFORE ORDERED** that defendant's motion for summary judgment (Doc. 64) is hereby granted.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss (Doc. 7) is moot.

**IT IS FURTHER ORDERED** that defendant's motion to exclude plaintiffs' witnesses (Doc. 75) is moot.

---

5. Fencing the impact area would impede the movement of tanks on the base.

6. As defendant notes, removal of duds poses a danger to military personnel which must be weighed against the danger to trespassers posed by leaving duds in place.

7. The court notes that at the time of the accident at issue here, Ft. Riley was operating shorthanded because some personnel were involved in Desert Storm.